John W. KIRCHMANN; Lene J. Kirchmann; Julie A. Kirchmann, by and through John W. Kirchmann, Her Father and Next Friend; Tricia J. Kirchmann; and Michael J. Kirchmann, by and through John W. Kirchmann, His Father and Next Friend, Appellants,

v.

UNITED STATES of America, Appellee.

No. 93–1015.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1993.

Decided Nov. 2, 1993.

**1274**

William Brown, Omaha, NE, argued (James Brown, on the brief), for appellant.

Adam Bain, Washington, DC, argued (Paul M. Honigberg and Daniel C. Cox, on the brief), for appellee.

Before McMILLIAN, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

John Kirchmann and his family appeal an order dismissing their lawsuit against the federal government under the Federal Tort Claims Act. The trial court held that the action was barred by either the independent contractor exception, the discretionary function exception, or both. We affirm the trial court.[1]

## I.

In 1959, the Air Force decided to build an Atlas missile facility near Mead, Nebraska, adjacent to the Kirchmanns' farm. General Dynamics was the contractor; H.K. Ferguson was the main subcontractor for mechanical and electrical work. In constructing the missile itself, employees of General Dynamics and H.K. Ferguson used a chemical solvent, trichloroethylene (TCE), to clean missile parts. The TCE was disposed of in the sanitary sewer system and on the ground.

No one disputes that TCE is toxic, and was known to be toxic at that time, and that its disposal should be considered disposal of hazardous waste. Construction of the missile facility was finished in 1961.

In 1989, the Kirchmanns learned from the Army Corps of Engineers that the TCE disposed of at the missile site had contaminated the groundwater at their farm. In 1991, the Kirchmanns sued the federal government, asserting claims under the Federal Tort Claims Act (FTCA), see 28 U.S.C. § 1346(b), §§ 2671–2680. Specifically, the Kirchmanns contended that the Air Force exercised such day-to-day control over the work on the project that the employees of General Dynamics and H.K. Ferguson were essentially acting as government employees; the Kirchmanns further contended that the Air Force itself was negligent in its failure to supervise adequately the disposal of the TCE used in the project.

The government moved for dismissal, asserting that the court lacked jurisdiction because of the independent contractor exception, see 28 U.S.C. § 2671, and the discretionary function exception, see 28 U.S.C. § 2680(a), to the FTCA. After trial to the court on a stipulated record with respect to the question of jurisdiction, the trial court granted the motion, holding that "the evidence shows that the government was not involved in the day-to-day operations of the construction of the Atlas missile sites ... [and therefore that] the construction contractors were independent contractors and cannot be considered employees of the federal government for purposes of the FTCA."

In the alternative, the trial court noted, "only one of the [government] regulations cited by [the Kirchmanns] regulates the Air Force in monitoring contractor activity." Even that regulation, however, expressly excludes from its scope the disposal of hazardous waste. Under those circumstances, the trial court stated, any supervision or lack of it by the Air Force of the disposal of hazardous waste was discretionary on the part of the Air Force and had to be presumed to

---

1. The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska.

have been "grounded in a policy decision." The evidence was, in fact, the trial court held, "that the Air Force decision to allow its commanders flexibility in dealing with [the] contractors [at the Atlas missile site] ... was grounded in policy considerations, such as the rationing of limited resources and skilled personnel." For that reason, the trial court declared, the discretionary function exception to the FTCA also barred the action.

## II.

The Federal Tort Claims Act allows suits against the United States for "money damages ... for injury or loss of property, or personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *See* 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674. " 'Employee of the government' includes ... employees of any federal agency, members of the military ... forces of the United States, ... and persons acting on behalf of a federal agency in an official capacity." *See* 28 U.S.C. § 2671. " 'Federal agency' includes the executive departments, ... the military departments, ... and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." *Id.*

Courts interpreting the statute have held that, in some instances, the government may exercise such pervasive control over the work done by the employees of an independent contractor as to transform those employees essentially into government employees for purposes of the FTCA. *See, e.g., State of Maryland v. Manor Real Estate and Trust Co.,* 176 F.2d 414, 419 (4th Cir.1949). The critical question is whether the government has asserted the power "to control the detailed physical performance of the contractor." *Logue v. United States,* 412 U.S. 521, 527–28, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). *See also id.* at 530, 93 S.Ct. 2215; *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976);

and *Charlima, Inc. v. United States,* 873 F.2d 1078, 1080–81 (8th Cir.1989).

In its opinion dismissing the Kirchmanns' case, the trial court held that the Air Force did not exercise such pervasive day-to-day control over the employees of General Dynamics and H.K. Ferguson in the disposal of hazardous waste at the missile site as to allow those employees to be considered government employees for purposes of the FTCA. In reaching that conclusion, the trial court evaluated the evidence presented to it by the parties, which included magazine articles about the missile site construction; internal government memos and reports with regard to the progress of the project; performance evaluations of Air Force personnel involved in the project; affidavits and depositions from a university chemist and employees of General Dynamics, H.K. Ferguson, and subcontractors; and various regulations and specifications allegedly relevant to the project.

■ We have reviewed all of the exhibits submitted by the Kirchmanns. We hold that the trial court did not clearly err in concluding that the Air Force did not exercise the kind of day-to-day control over the physical performance of the employees of General Dynamics and H.K. Ferguson in the disposal of hazardous waste at the missile site that would allow them to be considered government employees for purposes of the FTCA. *See, e.g., Parrish v. Omaha Public Power District,* 242 Neb. 783, 496 N.W.2d 902, 909–10, 912 (1993), and *Petznick v. United States,* 575 F.Supp. 698, 704 (D.Neb.1983). *See also McMichael v. United States,* 856 F.2d 1026, 1034–35 (8th Cir.1988).

## III.

The Kirchmanns argue that even if the government did not exercise sufficient control over the independent contractors' employees for them to be considered government employees under the Federal Tort Claims Act, the government may still be liable for the acts of those workers under Nebraska common law. The Kirchmanns cite specifically the state common-law rule that the employer of an independent contrac-

tor whose work involves "special risks or dangers," *Parrish v. Omaha Public Power District,* 242 Neb. 783, 496 N.W.2d 902, 911 (1993), is liable for personal injuries suffered by others as a result of that work if the employer fails to take reasonable precautions to prevent such injuries. This rule applies even where the employer has purported to delegate to the contractor, by the terms of the contract or otherwise, the responsibility for preventing injuries consequent to the work. *See, e.g., id.* 496 N.W.2d at 911, 913, and *Petznick v. United States,* 575 F.Supp. 698, 704 (D.Neb.1983). *See also Madison v. United States,* 679 F.2d 736, 740–41 (8th Cir.1982). The liability of the employer in those circumstances is direct and not vicarious through the contractor. *See, e.g., Parrish,* 496 N.W.2d at 911, and *Madison,* 679 F.2d at 740–41.

Even so, however, the Nebraska common-law rule requires that the employer (in this case, the government) have been negligent. We turn, then, to the question of whether the terms of the FTCA bar a negligence claim based on that or any other theory.

### IV.

### A.

■ The Federal Tort Claims Act specifically excludes from its coverage any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *See* 28 U.S.C. § 2680(a). Our initial inquiry in cases implicating the discretionary exception function is "whether the challenged actions were ... controlled by mandatory statutes or regulations." *United States v. Gaubert,* 499 U.S. 315, 328, 111 S.Ct. 1267, 1277, 113 L.Ed.2d 335 (1991). *See also Berkovitz v. United States,* 486 U.S. 531, 536, 544, 108 S.Ct. 1954, 1958, 1963, 100 L.Ed.2d 531 (1988), and *McMichael v. United States,* 856 F.2d 1026, 1031–32 (8th Cir. 1988). If so, and if a government employee has violated a statute or regulation, "there will be no shelter from liability because there is no room for choice and the action will be

contrary to [established governmental] policy." *United States v. Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274. *See also Berkovitz,* 486 U.S. at 536, 546–47, 108 S.Ct. at 1958, 1964; *Layton v. United States,* 984 F.2d 1496, 1503 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 213, 126 L.Ed.2d 170 (1993); and *McMichael,* 856 F.2d at 1033, 1033 n. 8.

■ The Kirchmanns cite six sections of various federal regulations that they contend were binding upon the Air Force in its supervision of the disposal of TCE—AFR 91–9, § 10.a, § 10.b; AFM 88–11, § 5–04.c; AFM 85–14, § E2.01; AFM 85–11, § C2.02.c(1); and TM 5–634, § 17.f. As the trial court noted, however, each regulation governs operations where the Air Force itself, rather than a contractor, disposes of the waste. *See, e.g., Clark v. United States,* 660 F.Supp. 1164, 1172–73, 1176–77, 1188 (W.D.Wash. 1987), *aff'd,* 856 F.2d 1433 (9th Cir.1988), and *Petznick v. United States,* 575 F.Supp. 698, 703, 705–07 (D.Neb.1983). None deals with how the Air Force should either supervise contractors or ensure that contractors follow federal or state laws in disposing of hazardous waste. *See, e.g., McMichael,* 856 F.2d at 1033, 1033 n. 8. *See also Berkovitz,* 486 U.S. at 544–45, 108 S.Ct. at 1962–63; *Layton,* 984 F.2d at 1503; *Tracor/MBA, Inc. v. United States,* 933 F.2d 663, 667 (8th Cir.1991); and *Allen v. United States,* 816 F.2d 1417, 1421, 1424 (10th Cir.1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988). We do not believe, therefore, that the trial court erred in concluding that no specific statute or regulation is implicated in this case.

### B.

■ Where no statute or regulation controls the government's monitoring of a contractor's work, the extent of monitoring required or actually accomplished is necessarily a question of judgment, or discretion, for the government. *See, e.g., Dalehite v. United States,* 346 U.S. 15, 35–36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953). *See also United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 813–14, 819–20, 104 S.Ct. 2755, 2764–65, 2767–68, 81

L.Ed.2d 660 (1984); *Layton*, 984 F.2d at 1502–03; and *Judy v. U.S. Department of Labor*, 864 F.2d 83, 84 (8th Cir.1988). Our final inquiry, then, is whether that discretion is of the type that Congress intended to protect from liability under the language of the discretionary function exception, *see* 28 U.S.C. § 2680(a), to the FTCA. *See, e.g., Berkovitz*, 486 U.S. at 536–37, 539, 545–47, 108 S.Ct. at 1958–59, 1960, 1963–64, and *United States v. Varig Airlines*, 467 U.S. at 813–14, 104 S.Ct. at 2764–65. *See also United States v. Gaubert*, 499 U.S. at 325 n. 7, 111 S.Ct. at 1275 n. 7; *Ayer v. United States*, 902 F.2d 1038, 1041–42, 1044 (1st Cir.1990); and *McMichael v. United States*, 856 F.2d at 1032.

■ The judgments protected by the act are those "grounded in the social, economic, or political goals," *United States v. Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1274, of the program within which they were made (in this case, the construction of an Atlas missile facility). *See also United States v. Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2765; *Duff v. United States*, 999 F.2d 1280, 1281 (8th Cir.1993); and *McMichael*, 856 F.2d at 1032. In other words, we ask whether "the action challenged ... involve[d] the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959. *See also id.* at 539, 545–47, 108 S.Ct. at 1960, 1963–64, and *McMichael*, 856 F.2d at 1033 n. 8. We may properly ask, as well, whether the action challenged *could* have involved policy judgments, by any objective standard. *See, e.g., United States v. Gaubert*, 499 U.S. at 325, 111 S.Ct. at 1275, and *Prescott v. United States*, 973 F.2d 696, 703 n. 5 (9th Cir.1992). Indeed, the presumption under the law is that when exercising discretion accorded to it, the government's actions will be "grounded in policy." *United States v. Gaubert*, 499 U.S. at 324, 111 S.Ct. at 1274.

■ If arguably based on policy considerations, both negligence in supervising a contractor and the failure to supervise a contractor at all are included in the decisions protected by the discretionary function exception. *See, e.g., United States v. Varig Airlines*, 467 U.S. at 820, 104 S.Ct. at 2768; *Dalehite*, 346 U.S. at 39–40, 73 S.Ct. at 969–

70; *Layton*, 984 F.2d at 1502–03; *In re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982, 993 (9th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988); and *Allen v. United States*, 816 F.2d at 1422 n. 5. *See also Ayer*, 902 F.2d at 1041, and *Myslakowski v. United States*, 806 F.2d 94, 97 (6th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987).

In this case, the government, through affidavits, asserts that the Air Force had the responsibility for administering the contracts for construction of not only the Atlas missile facility at issue here but 12 others as well. Part of that responsibility included monitoring the progress of the contractors' work and their compliance with the terms of their contracts. The government declares that the Air Force had to balance the necessity of completing the construction quickly in support of the national defense, using only 100 Air Force employees, against the desirability of supervising closely the day-to-day operations of the contractors and their 3,500 employees, which would have required more Air Force personnel, more time, and more money.

The government argues, therefore, that the decisions made in allocating personnel and finances to administration of the construction contracts were grounded in policy considerations related to the national defense and the personal and economic resources of the nation. We believe that the Kirchmanns have offered nothing that would have allowed the trial court to conclude that the government's stated reasons for not supervising the day-to-day operations of the contractors are pretextual, *see, e.g., Ayer*, 902 F.2d at 1044, or would be objectively illegitimate even if pretextual, *see, e.g., United States v. Gaubert*, 499 U.S. at 325, 325 n. 7, 111 S.Ct. at 1275, 1275 n. 7, and *Prescott*, 973 F.2d at 703 n. 5.

In other cases interpreting the FTCA, courts have found protected as policy judgments decisions related to "the extent to which [an agency] will supervise the safety procedures of private individuals," because of the impact of those decisions on the "feasibility and practicality" of a government pro-

gram with respect to "staffing and funding" and the "efficient allocation of agency resources." *United States v. Varig Airlines,* 467 U.S. at 819–20, 104 S.Ct. at 2767–68. *See also Dalehite,* 346 U.S. at 42, 73 S.Ct. at 971, and *Layton,* 984 F.2d at 1502–03. Under the circumstances of this case, therefore, we cannot say that the trial court erred in finding that the discretionary function exception to the FTCA bars any action by the Kirchmanns against the government based on the negligence of its own employees.

This is, admittedly, a harsh result for the Kirchmanns. The groundwater at their farm is contaminated with hazardous waste and evidently has been so for approximately 30 years, unknown to them until recently and not because of anything they did. Their land is now of questionable worth, through no fault of their own. They fear for their health and for the stability of the value of what is apparently their primary real-property asset, their farm.

By enacting the discretionary function exception to the waiver of sovereign immunity for the tort liability of the government, however, Congress precluded "judicial 'second-guessing' of ... [certain] administrative decisions" by the government. *United States v. Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2765. *See also id.* at 820, 104 S.Ct. at 2768; *Ayer,* 902 F.2d at 1044; and *Allen,* 816 F.2d at 1424. In doing so, Congress accepted the possibility that government agencies would have to take "certain calculated risks" in assessing "the degree of confidence that might reasonably be placed in a given [contractor]." *United States v. Varig Airlines,* 467 U.S. at 820, 104 S.Ct. at 2768. That acceptance presumably included the realization that some persons might be injured consequent to those assessments and that those persons would not be compensated for those injuries. *See, e.g., Dalehite,* 346 U.S. at 17, 73 S.Ct. at 958; *Georgia Casualty and Surety Co. v. United States,* 823 F.2d 260, 263 (8th Cir.1987); and *Allen,* 816 F.2d at 1424. It is not within our power to "determine the wisdom," *Georgia Casualty,* 823 F.2d at 263, of that decision by Congress.

V.

For the reasons stated, therefore, we affirm the judgment of the trial court.